UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
Francesco Roberto Sebastiani,                                    Docket No.: 1:19-cv-253

                        *Plaintiff,*

            -against                                             **AMENDED**
                                                                 **COMPLAINT**

Brooklyn Hospital Center, Pik Lee, M.D., both
Individually and as Aider and Abettor, and
Harry Dym, D.M.D., both Individually and as
Aider and Abettor.

                        *Defendants .*
--------------------------------------------------------------------------x

       Plaintiff, FRANCESCO ROBERTO SEBASTIANI ("Plaintiff" or "Dr. Sebastiani"), by

and through his attorneys, BORSTEIN TURKEL PC and RANNI LAW FIRM, complaining of

the Defendants, BROOKLYN HOSPITAL CENTER ("Hospital"), PIK LEE, M.D. ("Dr. Lee"),

and HARRY DYM, D.M.D. ("Dr. Dym") (collectively "Defendants"), for sexual harassment,

unlawful discriminatory practices, hostile work environment, and retaliation in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the New York State

Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("NYSHRL" ) and New York City

Human Rights Law, New York City Administrative Code § 8-107 ("NYCHRL"),as well as

conversion and defamation,  respectfully alleges the following:


                        <u>**JURISDICTION AND VENUE**</u>

       1.  Jurisdiction is proper over the Title VII claims under 28 U.S.C. § 1331.

       2.  Jurisdiction is proper over the NYSHRL and NYCHRL claims under 28 U.S.C.

§ 1367.

3.   Venue is properly laid in E.D.N.Y. based on the residence of the Defendants and because substantially all of the events or omissions giving rise to the claim occurred in Kings County.  28 U.S.C. § 1391.

### PARTIES

4.   At all relevant times, Dr. Sebastiani was acting chief resident of the Oral and Maxillofacial Surgery residency program at the Brooklyn Hospital Center.

5.   Hospital is a domestic not-for-profit corporation duly authorized and existing under the State of New York, engaged in the practice of medicine.

6.   At all relevant times, Dr. Pik Lee was an anesthesiologist employed by and/or working at Hospital and was an attending physician with authority over Sebastiani.  Dr. Lee is named a Defendant herein both for her own wrongful conduct and for her role in aiding and abetting the wrongful conduct of the other Defendants.

7.   At all relevant times, Dr. Harry Dym was the head of the Oral and Maxillofacial Surgery department of Hospital.  Dr. Dym is named a Defendant herein both for his own wrongful conduct and for his role in aiding and abetting the wrongful conduct of the other Defendants.

### Preliminary Statement

8.   Dr. Sebastiani was the victim of unlawful and repeated sexually assault and harassment by Dr. Lee, and discrimination by the Hospital on the basis of his gender.

9.   He was forced to endure a lack of patient safety safeguards and coerced to participate in a financial scam perpetrated by his department head.

10. When Dr. Sebastiani complained of the aforesaid, the Hospital failed to investigate

and instead retaliated against him.

11. Dr. Sebastiani was eventually constructively terminated by the Hospital through their retaliation against him and their acceptance of Dr. Lee's continued sexual harassment.

12. Following this conduct, Defendants defamed Plaintiff, causing him damage, loss of economic potential and emotional and mental anguish.

## FACTUAL ALLEGATIONS

13. On or about July 2015, Dr. Sebastiani began his Oral and Maxillofacial Surgery residency at the Hospital.

14. Theretofore, he had only been in New York City for interviews.

15. Dr. Sebastiani rented an apartment from the Hospital through its program for residents.

16. In or about September 2015, as part of his residency, Dr. Sebastiani began an anesthesia rotation at the Hospital.

17. Dr. Pik Lee, an anesthesiologist, was his supervising attending physician.

18. During Dr. Sebastiani's anesthesia rotation, Dr. Lee was Dr. Sebastiani's supervisor and Dr. Lee would provide input to the chairman of the department for his evaluations of Dr. Sebastiani.

19. Upon information and belief, Dr. Lee herself formally evaluated Dr. Sebastiani during his anesthesia rotation, which was under her supervision.

20. Dr. Sebastiani and Dr. Lee engaged in an intimate relationship that Dr. Sebastiani sought to end in or about December 2016.

21. In or about January 2017, Dr. Sebastiani began another 3-month rotation at Geisinger Medical Center in Wilkes-Barre, PA.

22. Despite or because of Dr. Sebastiani's efforts to end their intimate relationship, Dr. Lee sent repeated unwanted and harassing text messages to Dr. Sebastiani seeking to coerce Dr. Sebastiani to continue that relationship.  These text messages continued despite Dr. Sebastiani's expressions of unwillingness.  In order to coerce Dr. Sebastiani, Dr. Lee made threats that she would engage in actions relating to his employment and residency if he did not.

23. In or about April 2017, Dr. Sebastiani began another 3-month rotation at Bronx-Lebanon Hospital Center.

24. During this time, Dr. Lee contacted Dr. Sebastiani threatening to kill herself, to kill Dr. Sebastiani, and to kill his family with lethal doses of succinylcholine if he did not talk to her and continue a romantic relationship with her.

25. On at least one occasion, Dr. Lee demanded that Dr. Sebastiani continue the relationship for the purpose of impregnating her.

26. In or about July 2017, Dr. Sebastiani switched back to a rotation at the Hospital.

27. Dr. Lee's threatening calls, texts and emails continued despite Dr. Sebastiani's objections.

28. Dr. Sebastiani thereafter blocked Dr. Lee's number from his phone.

29. On July 17, 2017, Dr. Sebastiani complained to Dr. Dym, the Chairman of Oral and Maxillofacial Surgery at Hospital, about Dr. Lee's conduct.

30. Dr. Dym disregarded this complaint.

31. Dr. Lee grew increasingly hostile toward Dr. Sebastiani, writing on July 22, 2017:

Omg I know you're there.  You seriously not answering the phone?  You f***ing better call me back.  […]  You better not f*** with me.  I'll make sure you have no career to worry about.

32. On more than one occasion, Dr. Lee stalked Dr. Sebastiani at Hospital and harassed him all hours of day and night.

4

33. On occasion, Dr. Lee followed Dr. Sebastiani at the Hospital and confronted Dr. Sebastiani about his refusal to communicate with her and having blocked her phone number.

34. On July 26, 2017, Dr. Lee repeatedly poked and prodded Dr. Sebastiani over his objections, including in his buttocks and genitals, while he was operating on a patient in the Hospital, endangering that patient while sexually assaulting and harassing the Plaintiff.

35. On July 27, 2017, Dr. Sebastiani reported this instance of abuse to Dr. Dym.

36. Dr. Dym disregarded Dr. Sebastiani's report.

37. Over the ensuing months, Dr. Lee's harassment intensified.  She sent a series of lewd, profane and explicit text messages, including nude photos.

38. Despite Dr. Sebastiani's steadfast refusal to encourage this behavior and repeated requests that she stop, Dr. Lee barraged him throughout 2017 with sexually explicit text messages.

39. Dr. Lee also repeatedly threatened to destroy Dr. Sebastiani's career if he did not end his refusal to engage in an intimate relationship.

40. In one instance, Dr. Lee emailed Dr. Sebastiani: "I can always get another job but I doubt you can get another residency."

41. In another email, Dr. Lee wrote: "I can so easily get you in trouble.  You should start like [sic] looking for another residency program."

42. Dr. Lee again used threatening and stalking language:

I'm coming over to find out
And I'll look for you in the hospital if you're there
And if I can't find you I'll come to your clinic tomorrow
You can't ignore me forever

43. Dr. Lee even suggested that she would retaliate against innocent patients if

Dr. Sebastiani continued to rebuff her advances, asking "How long do you think it take [*sic*] someone to bleed out"—which intimations caused Dr. Sebastiani great distress.

44. On at least one occasion, Dr. Lee threatened to kill Dr. Sebastiani as well as his mother and his brother by injecting them with lethal doses of succinylcholine.

45. Following her in-person threats of violence, Dr. Lee sent dark, violent text messages with images of guns, knives, bombs, and syringes—the last, upon information and belief, a reference to the stated threat that she would murder Dr. Sebastiani and his family using succinylcholine.

46. On October 7, 2017, Dr. Sebastiani once again approached the Chairman of Oral and Maxillofacial Surgery, Dr. Harry Dym, and told Dr. Dym of Dr. Lee's pattern of abusive, threatening, and harassing conduct.

47. Dr. Dym refused to acknowledge Dr. Sebastiani and walked away.

48. Later in October of 2017, Dr. Sebastiani again approached Dr. Dym and requested to be transferred to another program where he would not be subject to the continued assault and harassment by Dr. Lee.

49. Dr. Dym told Dr. Sebastiani that if he transferred to another program, Dr. Dym would personally see to it that his career was destroyed.  Dr. Sebastiani was forced to remain under Dr. Lee's supervision, subject to her regular sexual assault and threats of violence.

50. Dr. Lee's abusive, threatening and harassing conduct continued.

51. On or about December 4, 2017, Dr. Sebastiani lodged a formal complaint with the Human Resources department at Hospital, in which he included the threats and harassment Dr. Lee had sent him by email.

52. Astoundingly, Hospital responded not by investigating these serious and even

6

criminal allegations regarding the attending Dr. Lee, but instead by retaliating against Dr. Sebastiani by perpetrating their own campaign of harassment against him based on false accusations and pretextual investigations of Dr. Sebastiani.

53. On December 5, 2017, in the Hospital operating room, Dr. Lee again interrupted Dr. Sebastiani as he was performing a surgical procedure and harassed him by prodding him in a sexual manner, once again endangering a patient while assaulting and harassing Dr. Sebastiani.

54. On December 6, 2017, Dr. Lee was the anesthesiologist all day in Dr. Sebastiani's operating room, and there she repeatedly and continually harassed Dr. Sebastiani and, with the intention of causing Dr. Sebastiani distress, acted in a manner that recklessly endangered his patients.

55. At one point on December 6, 2017, Dr. Lee purposefully lowered the heart rate of Dr. Sebastiani's patient to a dangerous level in order to provoke Dr. Sebastiani.

56. Dr. Lee then left Dr. Sebastiani's patient unattended under general anesthesia while she left the room.

57. On December 14, 2017, due to the Hospital's lack of any protection against Dr. Lee, Dr. Sebastiani again lodged a formal complaint seeking aid or redress.

58. Dr. Dym threatened members of the Oral and Maxillofacial Surgery Department with termination should they have communication with Dr. Sebastiani.

59. Hospital stopped paying Dr. Sebastiani after his complaint.

60. On December 17, 2017, Dr. Sebastiani saw that the Hospital had cut the locks to his lockers and removed Dr. Sebastiani's watch and other personal belongings stored therein. These items were not returned.

61. On or about December 17, 2017, Dr. Lee continued to make death threats to Dr.

7

Sebastiani.

62. Dr. Sebastiani did not feel safe in New York, and was experiencing substantial anxiety and fear due to the death threats from Dr. Lee.

63. On December 28, 2017, the Hospital changed locks on Dr. Sebastiani apartment door without telling him, thus locking him out.

64. Dr. Sebastiani was allowed into his apartment by a security guard known to him. Upon entering, Dr. Sebastiani found that his apartment had apparently been searched, his mail opened, and his papers strewn on the floor.  He was alarmed and frightened.

65. On or about December 31, 2017, Dr. Sebastiani rented a moving truck to retrieve his belongings from his apartment but was denied access by Hospital.

66. On or about January 1, 2018, Hospital again denied access to Dr. Sebastiani to retrieve his belongings from his apartment.

67. On or about January 12, 2018, Dr. Sebastiani called his health insurance company and was notified that Hospital had suspended his health insurance.  Dr. Sebastiani notified Hospital by email and requested additional information.

68. Hospital refused to release information about Dr. Sebastiani's residency for a substantial period of time, impeding his ability to continue his career.

69. On or about January 31, 2018, Dr. Lee was arrested for multiple charges relating to her treatment of the Plaintiff.

70. On or about February 1, 2018, Dr. Sebastiani was granted a criminal protective order against Dr. Lee.

71. Nonetheless, Hospital's retaliation against Dr. Sebastiani continued.  The

8

Defendant made of difficult for Dr. Sebastiani to retrieve his belongings; obtain confirmation of his residency; and rotations completed; and thwarted his attempts to transfer to a new program.

72. On or about February 1, 2018, Dr. Sebastiani was offered an interview for an advanced-standing residency position at another program, to begin July 2018.

73. Upon information and belief, the new program contacted Defendants, and the Defendants made false and malicious statements about Dr. Sebastiani. The new program immediately thereafter rescinded the residency offer. The precise content of the false and malicious statements that Defendants made to the new program are not known to the Plaintiff at this time. Upon information and belief, they concerned knowingly false allegations that the Plaintiff had engaged in fraudulent billing practices and/or worked outside the scope of his practice while at Hospital.

74. Upon information and belief, throughout 2018 Dr. Dym and the Hospital made false and defamatory statements regarding Dr. Sebastiani to others, including the Plaintiff's colleague Dr. Hernandez, and Geisinger Medical Center attending surgeon Dr. Holmes.

75. These malicious false statements have caused serious injury to Plaintiff's career prospects and emotional and mental anguish, through no fault of the Plaintiff.

76. When Dr. Sebastiani applied for other programs, the Defendants refused to provide confirmation of residency, rotations and other information necessary for his transfer. Defendants either withheld the necessary information or reluctantly and untimely provided it, maliciously injuring Dr. Sebastiani's career. Notwithstanding, Dr. Sebastiani ultimately was able to transfer and resume his career.

**FIRST CAUSE OF ACTION**

9

**Sexual Harassment and Gender Discrimination in Violation of Title VII**
**(42 U.S.C. § 2000e et seq.)**

77. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

78. By reason of the foregoing, Defendants violated the Civil Rights Laws of the United States as set forth in 42 U.S.C. § 2000e et seq.

79. By virtue of the discriminatory, harassing, reckless, wrongful, willful, and malicious treatment of the Plaintiff by the Defendants because of Plaintiff's gender, and due to the denial of equal opportunity, terms, conditions, and perquisites of employment, the Defendants violated the laws of the United States as set forth in 42 U.S.C. § 2000e et seq.

80. As a result of Defendants' discriminatory, harassing, reckless, unlawful, wanton, and malicious conduct, and the sexually hostile environment, Plaintiff was forced to endure the known discrimination of the Defendants and suffer non-economic and economic damages.

81. By virtue of the foregoing, Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation; requiring Defendants and their employees to undergo sexual harassment, discrimination and retaliation training, and any other equitable relief as the Court deems appropriate.

82. By reason of the Defendants' conduct and their violation of 42 U.S.C. §2000e et seq., Plaintiff is entitled to front pay, back pay, compensatory damages, damages for emotional distress, attorney's fees, costs and disbursements and any other remedy to the Court deems just and proper

**SECOND CAUSE OF ACTION**

### Hostile Work Environment in Violation of Title VII
### (42 U.S.C. § 2000e et seq.)

83.   Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

84.   By reason of the foregoing, Defendants have violated the Civil Rights Law of the United States as set forth in 42 U.S.C. §2000e et seq.

85.   The discriminatory, harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff by the Defendants constituted a severe and pervasive hostile work environment in which Plaintiff was denied equal opportunity, terms, conditions, and perquisites of employment.

86.   As a result of Defendants' sexually hostile environment, Plaintiff suffered emotional, non-economic and economic damage.

87.   Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring Defendants and their employees to undergo sexual harassment, discrimination, and retaliation training, and any other equitable relief as the Court deems appropriate, compensatory damages, attorney's fees, costs and disbursements.

### **THIRD CAUSE OF ACTION**

### Retaliation in Violation of Title VII
### (42 U.S.C. § 2000e et seq.)

88.   Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

89.   By reason of the foregoing, Defendants have violated the Civil Rights Law of the United States as set forth in 42 U.S.C. §2000e et seq.

90.   The harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff

by the Defendants, because the Plaintiff made a complaint of discrimination, objected to

discriminatory conduct, participated in a claim of discrimination, and was a witness to

discrimination, constitutes denial of equal opportunity, terms, conditions, and perquisites of

employment and is retaliation with the meaning of the law of the United States violating 42

U.S.C. §2000e et seq.

91.   As a result of Defendants' harassing, reckless, unlawful, wanton and malicious

retaliatory conduct Plaintiff suffered non-economic and economic damages.

92.   Plaintiff seeks affirmative relief which may include, but is not limited to,

requiring Defendants to post the avenues to address complaints of workplace harassment,

discrimination, and retaliation, requiring Defendants and their employees to undergo sexual

harassment, discrimination and retaliation training, and any other equitable relief as the Court

deems appropriate.

93.   By reason of the Defendants' retaliatory conduct, Plaintiff is entitled to front pay,

back pay, compensatory damages, damages for emotional distress, attorney's fees, costs and

disbursements of this action and such other and further relief as to the Court seems just and

proper

## FOURTH CAUSE OF ACTION

### Sexual Harassment and Gender Discrimination in Violation of the New York State Human Rights Law (McKinney's Executive Law §296(l)(a))

94.   Plaintiff incorporates by reference each and every allegation set forth in the

preceding paragraphs as if fully stated herein.

95.   The New York State Human Rights Law provides in relevant part: "It shall be an

unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age,

race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

96.   Plaintiff was discriminated against by having the terms of his continued employment dependent on his granting of sexual favors to his supervisor, Dr. Lee.

97.   The Defendants' sexual harassment and discrimination altered the terms, conditions and privileges of Plaintiff's employment in violation of the New York State Human Rights Law.

98.   During the course of his employment, Plaintiff experienced sexual harassment and discrimination that was so severe and pervasive that it altered the terms, conditions and privileges of his employment.

99.   Plaintiff was subject to unwelcome sexual harassment as a result of his gender.

100.   Plaintiff suffered severe sexual harassment.  Defendants allowed Dr. Lee to bait, offend, harass, touch, demean and otherwise act inappropriately and unlawfully towards Plaintiff and make numerous inappropriate sexual comments intended to intimidate and harass him.

101.   Hospital was at all relevant times responsible for ensuring a workplace free from harassment, discrimination and retaliation.

102.   Hospital was aware of Dr. Lee's unlawful actions and behaviors and took no steps to abate them even after Plaintiff notified Hospital, both directly and through Dr. Dym.

103.   Dr. Lee harassed and threatened the Plaintiff because he is a man and because he was vulnerable as a resident.

104.   Hospital failed to act on Plaintiff's complaints because he is a man and because he

was vulnerable as a resident.

105.  Hospital is responsible for the conduct of Dr. Lee in harassing and threatening the Plaintiff.

106.  Hospital is responsible for the conduct of Dr. Dym in disregarding reports of harassment and threats.

107.  Defendants would have taken Plaintiff's complaints more seriously had they come from a female resident.

108.  The harassment that Plaintiff experienced was so severe and created working conditions so unpleasant and intolerable as to compel any reasonable person to leave.

109.  As a result of the harassment he experienced, Plaintiff was constructively discharged from his employment.

110.  As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff suffered substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional trauma and distress; physical manifestations of pain and suffering, and other damages.

111.  As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses, and Plaintiff has also suffered future pecuniary losses, emotional pam, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses.

112.  Plaintiff has further experienced severe emotional and physical distress.


## FIFTH CAUSE OF ACTION

**Hostile Work Environment in Violation of the New York State Human Rights Law
(McKinney's Executive Law §296)**

113.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

114.  Plaintiff was subjected to a hostile work environment due to his gender.

115.  The environment at Hospital was of intimidation, harassment, and offensive touching at the hands of Dr. Lee, as well as Dr. Dym and Hospital condoning this behavior and the targeting of Plaintiff for complaining.

116.  The hostile work environment was severe and pervasive.

117.  Hospital, knew about, condoned, permitted, aided and abetted the hostile work environment, allowing it to continue.

118.  The harassment that Plaintiff experienced was so severe and created working conditions so unbearable and intolerable as to compel any reasonable person to leave.

119.  Plaintiff was constructively discharged from his employment.

120.  As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff suffered substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional  trauma and distress; physical manifestations of pain and suffering and other damages.

121.  As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## SIXTH CAUSE OF ACTION

### Retaliation under the New York State Human Rights Law
### (McKinney's Executive Law § 296(1)(e))

122.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

123.  New York State Human Rights Law Section 296(1)(e) states that it is unlawful "for any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

124.  Plaintiff engaged in a protected activity when he opposed practices forbidden by the New York State Human Rights law by complaining to Hospital both directly and via Dr. Dym about the discrimination, harassment, and hostile work environment alleged herein.

125.  Hospital, the employer, was aware of Plaintiff's complaints both directly and through Dr. Dym.

126.  Despite his complaints, the harassment not only continued but worsened.

127.  Defendants would have taken Plaintiff's complaints more seriously had they come from a female resident.

128.  Because of his complaints, Plaintiff was targeted by the Hospital and increasingly subjected to hostile treatment and adverse employment actions based on pretext.

129.  As a result, Plaintiff continued to suffer a hostile work environment and was forced to resign.

130.  Plaintiff was constructively discharged by reason of the retaliation against him

when he complained about sexual harassment, gender discrimination, and hostile work environment at Hospital.

131. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff suffered substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional trauma and distress; physical manifestations of pain and suffering and other damages.

132. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## SEVENTH CAUSE OF ACTION

### Sexual Harassment in Violation of the New York City Human Rights Law (Admin. Code of City of N.Y. § 8-107(1)(a))

133. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

134. Gender is a protected classification as defined by the New York City Admin. Code Section 8-102 (23), and so Plaintiff is a protected person in this Action where he was faced discrimination on the basis of his gender.

135. Under New York City Admin. Code Section 8-107 (1)(a), it is an unlawful discriminatory practice "for an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership

status, sexual orientation or alienage or citizenship  status  of  any person, to refuse to  hire or

employ or to  bar or to discharge from employment  such person or to discriminate against such

person in compensation or in terms, conditions or privileges  of employment."

136.  Plaintiff was discriminated against by having the terms of his continued

employment depend on his granting of sexual favors to his supervisor, Dr. Lee.

137.  Plaintiff experienced sexual harassment and discrimination that was so severe and

pervasive that it altered the terms, conditions and privileges of his employment.

138.  Plaintiff was subject to unwelcome sexual harassment as a result of his gender.

139.  Plaintiff suffered sexual harassment at the hands of his superior, Dr. Lee, who

baited, offended, demeaned and otherwise acted inappropriately and unlawfully towards Plaintiff

and made numerous inappropriate sexual comments meant to intimidate and harass him, merely

because he was a man and a vulnerable resident.

140.  Hospital was at all relevant times responsible for ensuring a workplace free from

harassment, discrimination and retaliation.

141.  Hospital was aware of the harassment but did nothing, and in fact condoned said

behavior.

142.  Defendants would have taken Plaintiff's complaints more seriously had they come

from a female resident.

143.  Hospital is responsible for the conduct of Dr. Lee in harassing Plaintiff because it

was aware of, accepted, and condoned those activities, which took place in the course of Dr.

Lee's employment and supervision of the Plaintiff, and because Hospital aided and abetted them.

144.  The harassment that Plaintiff experienced was so severe and created working

conditions so unpleasant and intolerable as to compel any reasonable person to leave.

145. As a result of the harassment he experienced, Plaintiff was constructively discharged from his employment.

146. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff suffered substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional trauma and distress; physical manifestations of pain and suffering and other damages.

147. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## EIGHTH CAUSE OF ACTION

### Gender Discrimination under the New York City Human Rights Law (Admin. Code of City of N.Y. § 8-107)

148. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

149. As a man, Plaintiff is a protected person as defined by the New York City Admin. Code Section 8-102 (23).

150. Under New York City Admin. Code Section 8-107(1)(a) it is an unlawful discriminatory practice "for an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership

19

status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

151. During the course of his employment, Plaintiff was discriminated against due to his gender in the terms, conditions and privileges of his employment.

152. Hospital management participated in the unlawful discrimination against Plaintiff through harassing and offensive sexual comments calculated to humiliate and discomfit him.

153. At all relevant times Hospital knew of and tolerated the unlawful conduct.

154. The above harassment complained of herein, and the acceptance of such by Hospital and Dr. Dym, was part of a pattern of discrimination.

155. Defendants would have taken Plaintiff's complaints more seriously had they come from a female resident.

156. The discrimination against Plaintiff experienced created working conditions so unpleasant and intolerable as to compel any reasonable person to leave.

157. As a result of the discrimination he experienced, Plaintiff was constructively discharged from his employment.

158. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff suffered substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional trauma and distress; physical manifestations of pain and suffering and other damages.

159. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical

expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## NINTH CAUSE OF ACTION

### Hostile Work Environment under the New York City Human Rights Law (Admin. Code of City of N.Y. §8-107)

160.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

161.  Plaintiff was subjected to a hostile work environment on account of his gender.

162.  The environment at Hospital was of intimidation, harassment, and offensive touching at the hands of Dr. Lee, as well as Dr. Dym and Hospital condoning this behavior and the targeting of Plaintiff for complaining.

163.  The hostile work environment was severe and pervasive.

164.  Hospital, knew about, condoned, permitted, aided and abetted the hostile work environment, allowing it to continue.

165.  The harassment that Plaintiff experienced was so severe and created working conditions so unbearable and intolerable as to compel any reasonable person to leave.

166.  Plaintiff was constructively discharged from his employment.

167.  As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff suffered substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional trauma and distress; physical manifestations of pain and suffering and other damages.

168.  As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## TENTH CAUSE OF ACTION

### Retaliation in Violation of the New York City Human Rights Law (Admin. Code of City of N.Y. § 8- 107(7)))

169.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

170.  Retaliation is unlawful under the New York City Human Rights Law. Admin. Code of City of N.Y. § 8-107(7).

171.  Plaintiff engaged in a protected activity when he complained to Hospital, both directly and via Dr. Dym, about the harassment, discrimination, and hostile work environment he was suffering.

172.  Hospital, the employer, was aware of Plaintiff's complaints both directly and through Dr. Dym.

173.  Despite his complaints, the harassment not only continued but worsened.

174.  Defendants would have taken Plaintiff's complaints more seriously had they come from a female resident.

175.  Because of his complaints, Plaintiff was targeted by the Hospital and increasingly subjected to hostile treatment.

176.  As a result, Plaintiff continued to suffer a hostile work environment and was forced to resign.

177.  Plaintiff was constructively discharged by reason of the retaliation against him when he complained about sexual harassment, gender discrimination, and hostile work environment at Hospital.

178.  As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff suffered substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional  trauma and distress; physical manifestations of pain and suffering and other damages.

179.  As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## ELEVENTH CAUSE OF ACTION

### Conversion

180.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

181.  Defendant Hospital took personal property of the Plaintiff and/or denied Plaintiff access to his own personal property.

182.  At all relevant times, Defendant Hospital knew that this property was the personal

property of the Plaintiff.

183.  Defendants' wrongful acts were undertaken with malice and wrongful intent.

184.  Defendants caused the Plaintiff to suffer substantial economic, emotional and psychological damages, in an amount to be determined at trial, as well as punitive damages, in an amount to be determined at trial.


## TWELFTH CAUSE OF ACTION

### Defamation

185.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

186.  Defendants made false and defamatory statements about the Plaintiff.

187.  At the time the Defendants made these statements, the Defendants knew the statements to be false and defamatory.

188.  Defendants made these false and defamatory statements solely out of malice, to malign and injure the Plaintiff.

189.  These statements were made to and/or in front of others, who heard Defendants' false and defamatory statements.

190.  As a result of these malicious false statements, Plaintiff suffered harm to his reputation, career opportunities, and income, as well as severe emotional and mental anguish, in an amount to be determined at trial.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor for the following relief:

1.      Declaring that the Defendants engaged in unlawful employment practices prohibited by United States Civil Rights Act Title VII, 42 U.S.C. § 2000e et seq., state common law, New York State Executive Law §296 et Seq. and New York City Administrative Code Title 8, §8-107 et Seq.; and that the Defendants harassed, discriminated against, constructively discharged, and retaliated against Plaintiff on the basis of his gender; and

2.      For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits; and

3.      For compensatory damages; and

4.      For punitive damages; and

5.      For emotional distress damages; and

6.      For physical manifestation of pain and suffering damages; and

7.      For attorney's fees and costs of this action; and

8.      For interest at the maximum legal rate on all sums awarded; and

9.      For such other and such further relief as the Court deems just and proper.

Plaintiff demands trial by jury.

Dated:    New York, New York
          April 5, 2019

                                        BorsteinTurkel PC
                                        *Co- Counsel for Plaintiff*


                            By: _____
                                        Leon Borstein
                                        420 Lexington Avenue - Suite 2920
                                        New York, New York 10170
                                        (212) 687-1600

                                        Ranni Law Firm
                                        *Co- Counsel for Plaintiff*
                                        Joseph J. Ranni, Esq.
                                        148 North Main Street
                                        Florida, NY 10921