UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 FRANCESCO ROBERTO SEBASTIANI,

                    Plaintiff,                    **MEMORANDUM & ORDER**
                                                  19-CV-253 (EK)(ST)
             -against-

 BROOKLYN HOSPITAL CENTER et al.,

                    Defendants.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

        Francesco Sebastiani worked as a surgical resident at Brooklyn Hospital Center.  He alleges that his ex-girlfriend — Pik Lee, a contract anesthesiologist at the same hospital — sexually harassed him both during and outside of working hours. He now sues Lee, the hospital, and his supervising physician (Harry Dym), bringing Title VII claims for sex discrimination, hostile work environment, and retaliation.  He also brings analogous state- and city-law claims, and a claim for conversion.[1]

        All three defendants have moved for summary judgment. *See* ECF Nos. 174, 177.  For the reasons outlined below, their motions are granted in part and denied in part.

---

[1] The amended complaint also contained a defamation claim, but that claim was dismissed before discovery.  *See generally* ECF No. 29.

## I.    Background

The following facts are drawn from the parties' Local Rule 56.1 statements and the exhibits appended to their summary judgment papers.  Unless otherwise noted, the facts discussed below are undisputed.[2]  Where a fact is disputed, and Sebastiani has offered admissible evidence to support his position, the Court relies on Sebastiani's view of events.  *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 271 n.2 (S.D.N.Y. 2024).  And of course, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor" of Sebastiani.  *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009).[3]

Starting in July 2015, Sebastiani worked as a maxillofacial surgical resident at Brooklyn Hospital Center, a private, non-profit hospital.  Pl.'s Rule 56.1 Counterstatement ¶¶ 1, 3, ECF No. 178-31 ("Pl.'s 56.1").  Harry Dym directed the maxillofacial surgery program.  *Id.* ¶ 4.  Several months into his residency, Sebastiani met Dr. Pik Lee, a contract anesthesiologist employed by North American Partners in Anesthesia, LLP ("NAPA") who was assigned to work at Brooklyn

---

[2] Where the Court cites only one party's 56.1 statement, it is because the opposing party has "either not disputed those facts or has not done so with citations to admissible evidence." *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 271 n.2 (S.D.N.Y. 2024) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)).

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Hospital Center. *Id.* ¶¶ 5, 22, 25. Between December 2015 and April 2017, Sebastiani and Lee engaged in a consensual romantic relationship. *Id.* ¶¶ 22, 46.

Though he met Lee at Brooklyn Hospital Center, Sebastiani did not work there for most of their relationship. Sebastiani completed an anesthesiology rotation at the Center from September 2015 to January 2016. *Id.* ¶ 18; Rotation Chart, ECF No. 177-20.[4] During that rotation, Lee (along with several other anesthesiologists) oversaw his work. Sebastiani Dep. 633:5-634:5, ECF No. 177-5. But in February 2016, Sebastiani switched to another rotation. *See* Rotation Chart. And from April 2016 to June 2017, Sebastiani was on rotation at other hospitals and was "not working physically at Brooklyn Hospital [Center]," with Lee, at all. Pl.'s 56.1 ¶¶ 19-20.

Sebastiani ended his relationship with Lee in April 2017. *Id.* ¶ 46. He alleges that Lee then began to harass him, sexually and otherwise, because of "her displeasure at their breakup and his refusal to impregnate her." *Id.* ¶¶ 50, 51; *see also* Sebastiani Dep. 182:23-183:7, ECF No. 177-5. The alleged harassment fell into two categories.

First, Lee threatened Sebastiani — both virtually and in-person. After Sebastiani blocked her phone number, Lee found

---

[4] Page numbers in citations to record documents other than deposition transcripts and briefs refer to ECF pagination.

3

him in the hospital and promised to kill him if he did not unblock her.  Sebastiani Dep. 787:23-788:2, ECF No. 177-5; *see also id.* 182:12-19 (testifying that Lee "threatened me, my family, my mom, my brother").  She also sent text messages in which she threatened (explicitly and implicitly) Sebastiani's career prospects and physical well-being.  For example, Lee sent the following messages after the April 2017 breakup:

- "You better not f--k with me.  I'll make sure you have no career to worry about." ECF No. 177-30, at 23.

- "How long do you think it takes someone to bleed out?"  *Id.* at 34.

- A message with emojis of a gun, knife, bomb, and syringe.  ECF No. 178-11, at 2.

- "[Y]ou're screwed and you should start looking . . . for new residency programs." Sebastiani Dep. 746:16-19, ECF No. 178-24.

Second, Sebastiani alleges that Lee interfered with surgeries that he was performing, including by sexually harassing him.  Most notably, Sebastiani claims that on July 26, 2017, Lee entered an operating room during surgery, "groped his genitals for two seconds or less," and whispered "you can't hide from me, I'll end your career and life."  Pl.'s 56.1 ¶ 55; Sebastiani Dep. 691:18-23, 705:2-710:23, ECF No. 177-5.  He also claims that Lee attempted (without success) to grope him during a surgery on December 5 and again harassed him — and endangered

4

a patient in the process — during a surgery on December 6. Pl.'s 56.1 ¶¶ 102-06, 111.

Sebastiani says he twice complained to Dym about Lee's behavior.  During discovery, he testified that in July 2017, he told Dym (during a conversation in Dym's operating room) that Lee had groped him during surgery.  Sebastiani Dep. 190:2-192:9, ECF No. 178-23.  Dym took no action.  *Id.* at 191:18-192:2.  And on October 17, Sebastiani told Dym that Lee had escalated to sending him death threats.  Sebastaini Dep 220:15-10, 221:22-222:4, ECF No. 177-5.  Dym told Sebastiani that "little Dr. Lee's not going to hurt you," and then gave him an unrelated work assignment.  *Id.* at 222:5-13.  There are no records memorializing these conversations, and Dr. Dym denies that they ever took place.  Pl.'s 56.1 ¶¶ 65-66.

Lee remained irate with Sebastiani.  So, on December 3, 2017, she anonymously informed the hospital that Sebastiani had been sub-leasing his apartment through Airbnb.  *Id.* ¶ 94. Sebastiani leased his apartment from the hospital, and his lease forbade short-term subrentals.  *Id.* ¶¶ 14-16.  The hospital placed Sebastiani on paid administrative leave while it investigated Lee's allegation.  *Id.* ¶¶ 133, 156.  At around the same time (on December 4), Sebastiani reported Lee's behavior to the hospital's human resources department.  *Id.* ¶ 97.

As the hospital's investigation proceeded, it began to suspect that Sebastiani had been performing unauthorized off-hour dental surgeries.  *Id.* ¶¶ 142-44.  It organized a December 20 meeting between Sebastiani and a human resources representative, at which Sebastian would "answer questions about the investigation into his illicit dental procedures."  *Id.* ¶¶ 152-53.  However, one hour before that meeting was supposed to begin, Sebastiani resigned, "[e]ffective immediately."  *Id.*

The parties agree that Sebastiani resigned "voluntarily," *id.* ¶ 160, though Sebastiani alleges that he was constructively discharged.  Compl. ¶ 166, ECF No. 17.  Sebastiani claims that he only resigned because "the [h]ospital had ignored [his] complaints about Lee" and "he was scared of being in New York."  Pl.'s 56.1 ¶ 152.  But by the time he did so, NAPA had already reassigned Lee at the hospital's request.  *Id.* ¶ 138.

## II.  Legal Standard

Summary judgment is appropriate when there is no genuine dispute of material fact, such that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  And a fact is material

6

if it "might affect the outcome of the suit under the governing law." *Id.*

The movant bears the burden of showing that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-movant would bear the burden of persuasion on a given issue at trial, the movant can satisfy its burden of production either by "submitting evidence that negates an essential element of the non-moving party's claim," or "demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

### III. Discussion

There are genuine disputes of material fact regarding Sebastiani's Title VII, NYSHRL, and NYCHRL hostile work environment claims. His remaining claims are dismissed.

**A.   Title VII Claims**

1.   <u>Claims Against the Individual Defendants</u>

Sebastiani's federal claims against Lee and Dym fail out of the gate because Title VII does not provide for individual liability. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). Those claims are therefore dismissed.

2.    Sex Discrimination Claim Against the Hospital

Sex discrimination claims under Title VII are subject to the *McDonnell-Douglas* burden-shifting framework. *Walsh v. N.Y.C Housing Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016). To establish a *prima facie* case of sex discrimination (at step one of that framework), a plaintiff must show that (1) he is within a protected class, (2) he was qualified for his position, (3) he was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Id.*

Sebastiani has identified insufficient record evidence to support a finding that the hospital took adverse employment action against him. An adverse employment action is "some injury respecting [plaintiff's] employment terms or conditions." *Muldrow v. City of St. Louis*, 601 U.S. 346, 359 (2024). Here, Sebastiani's only argument is that the hospital constructively discharged him. Pl.'s Br. in Opp. to Summ. J. 23.[5] But Sebastiani voluntarily resigned in the face of an internal investigation. Pl.'s 56.1 ¶ 160; *see also id.* ¶ 155 ("No Hospital employee told Plaintiff that he had been terminated

---

[5] The hospital also placed Sebastiani on paid administrative leave during the investigation. Pl.'s 56.1 ¶¶ 133, 156. Sebastiani does not appear to argue that this was an adverse employment action. Nor could he, given that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006).

8

from his residency program prior to submitting his resignation on December 20.").[6]  And when an employee chooses to resign rather than face internal disciplinary charges, "the resignation cannot later be construed as a constructive discharge."  *Bailey v. N.Y.C. Bd. of Educ.*, 536 F. Supp. 2d 259, 266 (E.D.N.Y. 2007).

Sebastiani counters that he truly resigned because he was "scared to be in New York" given Lee's harassment and the hospital's failure to take any action.  *See* Opp'n Br. 23, ECF No. 178; Pl.'s 56.1 ¶¶ 158-60.  But this argument is belied by his own admissions and, more importantly, fails to meet the objective standard required to establish constructive discharge. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir. 2004) ("this issue is assessed objectively").  A party alleging constructive discharge must prove that conditions were "so difficult or unpleasant that *a reasonable person in the employee's shoes* would have felt compelled to resign."  *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993) (emphasis added).  Sebastiani acknowledges that the last time he saw Lee was on December 6 and, on December 11 — prior to his

---

[6] Sebastiani testified in another action that Dym "told [him] the hospital was going to fire [him] and there's nothing he could do" on December 7.  Sebastiani Dep. 185:15-19, ECF No. 177-28.  But Dym said it was "due to Airbnb" — another instance of misconduct on Sebastiani's part that the hospital was investigating — and Sebastiani believed him.  *Id.* at 185:18-19, 188:3-23.

resignation — he learned that she had been "reassigned . . . from any work" at Brooklyn Hospital Center. Pl.'s 56.1 ¶¶ 138-39. He points to no evidence to support the conclusion that his working conditions remained so intolerable following Lee's reassignment that a reasonable person would have felt compelled to resign.

Sebastiani has not established a necessary element of his *prima facie* case, so his claim against the hospital for sex discrimination under Title VII fails.

3. Hostile Work Environment Claim Against the Hospital

To establish a hostile work environment based on sex, a plaintiff must show that "(1) [he] subjectively perceived [his] work environment as hostile or abusive, (2) a reasonable person would find the work environment objectively hostile or abusive, and (3) the hostility or abuse was based on sex." *Andersen v. Rochester City Sch. Dist.*, 481 F. App'x 628, 630 (2d Cir. 2012). The plaintiff must also show that "a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). Here, the hospital is not entitled to summary judgment on Sebastiani's hostile work environment claim because Sebastiani has adduced sufficient evidence to support a jury's finding that (1) Lee's conduct created a hostile work environment; and (2) her conduct can be imputed to the hospital.

10

a.    There Is a Genuine Factual Dispute About Whether Lee's Behavior Created a Hostile Work Environment

Sebastiani has adduced sufficient evidence of a hostile work environment to survive summary judgment.  Much of Lee's alleged harassment is appropriately characterized as the behavior of a "jilted lover seek[ing] retribution through actions that [were] not gender . . . -based."  *Stepheny v. Brooklyn Hebrew Sch. for Special Child.*, 356 F. Supp. 2d 248, 263 (E.D.N.Y. 2005); *see also Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 428 (E.D.N.Y. 2012) ("[C]ourts often find that harassment by a co-worker is not . . . based on sex when it arises from a failed relationship.").  But Sebastiani also alleges that Lee "grabbed" both his "buttocks" and his "genitals" during surgery (and attempted to do so a second time), thereby engaging in "one of the most severe forms of sexual harassment."  *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012); *see* Sebastiani Dep. 685:19-686:10, ECF No. 178-24.

Courts in this circuit have repeatedly held that "[a] single incident of contact with an intimate body part is sufficient to establish a hostile work environment claim."  *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 656 (E.D.N.Y. 2015); *see also Conlan v. Liberty Mut. Grp., Inc.*, No. 23-CV-8947, 2024 WL 4792112, at *5 (S.D.N.Y. Nov. 13, 2024)

11

(collecting cases).  And Sebastiani's testimony is evidence that such contact occurred.  *See* Sebastiani Dep. 685:19-686:10, ECF No. 178-24.  While Sebastiani relies almost entirely upon his own testimony to establish that the groping incident occurred,[7] the testimony is not so "contradictory or rife with inconsistencies" that it is "facially implausible."  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010).  That no one else in the operating room witnessed the harassment, *see* Pl.'s 56.1 ¶ 62, may undermine Sebastiani's testimony.  But such credibility determinations are reserved for a jury.  *Fincher*, 604 F.3d at 726.

> b.    There Is A Genuine Factual Dispute About the Hospital's Awareness of Lee's Conduct

Whether this harassing behavior can be imputed to the hospital is also a question for the jury.  "There are two ways that liability under Title VII can be imputed to an employer." *Sarkis v. Ollie's Bargain Outlet*, 560 F. App'x 27, 29 (2d Cir. 2014).  First, the plaintiff can show that the harasser was "a supervisor with immediate or successively higher authority over the employee."  *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).  Second, the plaintiff can show that "non-supervisory co-workers" harassed him, and that "the

---

[7] Lee and Sebastiani's text messages could be interpreted as indirect corroboration because they do at least support his allegations that Lee refused to accept the termination of their romantic relationship and made both career and physical threats against him.  *See* page 3—4, *supra*.

12

employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Fairbrother v. Morrison*, 412 F.3d 39, 49 (2d Cir. 2005), *abrogated on other grounds by Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006). Sebastiani adduces no evidence that Lee functioned as his supervisor, but he does offer testimony that could support a finding that the hospital knew about Lee's harassment and failed to act.

Given the timeline here, no reasonable jury could conclude that Lee served as Sebastiani's supervisor during the alleged harassment. Sebastiani agrees that the harassment only began after he broke up with Lee in April 2017, and that he worked at other hospitals in which Lee had no authority from April 2017 to June 2017. Pl.'s 56.1 ¶¶ 19-20, 38, 46, 50. So, the pertinent question is whether Lee was Sebastiani's supervisor at Brooklyn Hospital Center between July 2017 and his resignation in December 2017. *Id.* ¶¶ 19, 46, 152.[8] Nothing in the record suggests she was.

A "supervisor" under Title VII is someone who is "empowered . . . to take tangible employment actions against the

---

[8] Sebastiani points to his testimony that Lee was his supervisor during his anesthesiology rotation. Sebastiani Dep. 631:21-632:9, ECF No. 178-24. But that rotation ended in January 2016, more than one year before the alleged harassment began. *Compare id.* at 631:15-20 (stating that rotation ended in January 2016), *with* Pl.'s 56.1 ¶ 50 (alleged harassment began in April 2017). Thus, any authority Lee had over Sebastiani by virtue of his rotational placement dissipated well before the alleged harassment started.

13

victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013). The parties agree that Lee was an independent contractor, not a hospital employee. Pl.'s 56.1 ¶ 25. She played no part in Sebastiani's hiring. *Id.* ¶ 27. She never reviewed his performance. *Id.* ¶ 31. She played no role in setting, raising, or lowering his salary. *Id.* ¶ 34. And most importantly, she had "no role in administering [his] compensation, terms, conditions, or privileges of employment." *Id.* ¶ 35. Thus, the undisputed facts make clear that Lee could not "take tangible employment actions" against Sebastiani. *Vance*, 570 U.S. at 431. Sebastiani's unsupported and contradictory testimony that Lee could "have [him] terminated," Sebastiani Aff. ¶ 2, ECF No. 175-2, need not be credited. *See Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 105-06 (2d Cir. 2011).

In response, Sebastiani relies on his testimony that Lee was an "anesthesia on-call supervisor" during surgeries he performed. Sebastiani Dep. 634:19-24, ECF No. 178-24. But whether someone is a "supervisor" under Title VII is a question of function, not form. *See Vance*, 570 U.S. at 431-32; *accord Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027,

14

1033 (7th Cir. 1998) ("[T]he touchstone for determining supervisory status is the extent of authority possessed by the purported supervisor.").  And the record does not reveal *over whom* she acted as a supervisor during surgeries.  *See, e.g.*, Sebastiani Dep. 641-42, ECF No. 177-5.  So, absent evidence of Lee's actual authority over *Sebastiani*, the mere fact that her job title included the word "supervisor" does not create a genuine dispute of material fact.

There is, however, a genuine dispute of material fact regarding whether the hospital knew (or should have known) about the harassment and failed to act.  Sebastiani testified that in July 2017, he told Dym — the Department Chairman — that Lee had "grabbed [him] in the operating room."  Sebastiani Dep. 190:2-192:9, ECF No. 178-23; Pl.'s 56.1 ¶ 4.  And again on October 17, Sebastiani claims to have told Dym that Lee's conduct "was escalating to death threats and [that] she had . . . stated that [she] want[ed] to kill [Sebastiani]."  Sebastiani Dep. 220:15-222:4, ECF No. 177-5.  Dym allegedly dismissed his concerns, *id.* at 222:6-20, ECF No. 178-23, and the hospital took no action against Lee until Sebastiani complained to human resources in December.  Pl.'s 56.1 ¶ 97, 137.  Dym, on the other hand, denies that either conversation occurred.  *Id.* ¶ 66.  Because this is the classic "he said, [he] said" situation "on which the court cannot . . . take a side at the summary judgment stage,"

15

*Fincher*, 604 F.3d at 726, a genuine dispute remains regarding whether Lee's conduct can be imputed to the hospital.

Sebastiani's Title VII hostile work environment claim against Brooklyn Hospital Center survives summary judgment.

### 4.    Retaliation Claim Against the Hospital

The *McDonnell-Douglas* framework also governs Title VII retaliation claims.  *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015).  To state a *prima facie* case of retaliation, a plaintiff must show (1) participation in a protected activity; (2) the defendant's knowledge of that activity; (3) an adverse employment action; and (4) a causal connection between the adverse action and the protected activity.  *Id.* at 315-316.

As already discussed with regard to Sebastiani's sex-discrimination claim, he has adduced no record evidence showing that he faced an adverse employment action.  *See Muldrow*, 601 U.S. at 357 (standard for adverse action is higher for a retaliation claim than for a discrimination claim).  His retaliation claim against the hospital therefore fails for the same reasons.

## B.    NYSHRL Claims

Sebastiani also brings claims of sex discrimination, hostile work environment, and retaliation under the New York

16

State Human Rights Law ("NYSHRL").  His hostile work environment claim survives against all parties.

1.   NYSHRL Claims Against the Hospital

"Although the NYSHRL was amended in 2019, [Sebastiani's] claims accrued in 2017 and are thus governed by the pre-amendment standards," which look to "the same framework as corresponding Title VII . . . claims."  *Allen v. City of New York*, No. 24-CV-2589, 2025 WL 3152723, at \*3 (2d Cir. Nov. 12, 2025); *see also Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 363, n.3 (2d Cir. 2025) (similar).  The only modest difference is in the NYSHRL's standard for imputing liability for the discriminatory conduct to an employer: under the NYSHRL, "an employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it."  *Heskin v. Insite Advert., Inc.*, 3-CV-2508, 2005 WL 407646, at \*23 (S.D.N.Y. Feb. 22, 2005).

Here, Sebastiani's hostile work environment claim survives under Title VII, so the sole question is whether Lee's conduct can be imputed to the hospital because of its encouragement, condonation, or approval.  "An employer's calculated inaction in response to discriminatory conduct may . . . indicate condonation."  *State Div. of Hum. Rts. on Complaint of Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687

17

(1985).  And as described above, there is a genuine dispute of fact regarding whether Dym took "calculated inaction" in response to Sebastiani's reports of Lee's harassment.

Accordingly, Sebastiani's NYSHRL hostile work environment claim against the hospital may proceed.  Because they cannot survive under Title VII, his discrimination and retaliation claims under the NYSHRL are also dismissed.

2.  NYSHRL Claims Against the Individual Defendants

Unlike under Title VII, there is individual liability under the NYSHRL.  A supervisor can be liable as an "employer" under the NYSHRL if they "actually participate[d] in the conduct giving rise to the discrimination."  *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995)).  And even a co-worker with no hiring or firing authority over the plaintiff can be held liable as an aider and abettor if they personally participated in the conduct giving rise to the claim.  *Id.* at 158.  Aiding and abetting liability exists "even where an individual defendant's actions serve as the predicate for the employer's vicarious liability, so long as the employer's conduct has also been found to be discriminatory under the NYSHRL."  *Xiang v. Eagle Enters., LLC*, No. 19-CV-1752, 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020) (collecting cases); *see also Tomka*, 66 F.3d at 1317 (allegation that "each of the individual defendants assaulted [plaintiff]

18

and thereby created a hostile working environment" sufficient to establish aiding and abetting liability).[9]

Here, both Lee and Dym allegedly participated in the conduct giving rise to Sebastiani's hostile work environment claim. Lee allegedly harassed Sebastiani and Dym allegedly ignored his complaints about the harassment. *See Parra v. City of White Plains*, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014) ("A supervisor's failure to take adequate remedial measures in response to a complaint of discrimination" can constitute "actual participation."). So, Sebastiani's NYSHRL hostile work environment claim may proceed against the individual defendants.

Because Sebastiani cannot establish the hospital's liability for NYSHRL sex discrimination and retaliation, those claims also fail as to the individual defendants. *De Figueroa v. New York*, 403 F. Supp. 3d 133, 163 (E.D.N.Y. 2019) (collecting cases) ("the liability of an employer must be established as a predicate to individual liability for aiding and abetting").

---

[9] Lee cites several New York Supreme Court Appellate Division decisions disagreeing with the *Tomka* line of cases. *See* Lee's Mem. in Supp. of Mot. for Summ. J. 3 n.3, ECF. No. 176. But "where the Second Circuit is . . . interpreting existing New York cases, the Court is bound by Second Circuit precedent, even on issues of state law." *Adebiyi v. Yankee Fiber Control, Inc.*, 705 F. Supp. 2d 287, 291 n.4 (S.D.N.Y. 2010). And *Tomka* makes clear that, at the very least, an individual defendant can be held liable for aiding and abetting discriminatory conduct when they were one of several people involved.

## C.    NYCHRL Claims

Finally, Sebastiani brings claims of hostile work environment and retaliation under the New York City Human Rights Law ("NYCHRL").  "[T]he NYCHRL requires an independent analysis" from Title VII and the NYSHRL, which "can serve only as a *floor* below which the City's Human Rights law cannot fall."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  Even so, only Sebastiani's hostile work environment claim under NYCHRL survives; his retaliation claim is dismissed.[10]

*Hostile Work Environment*.  Sebastiani's NYCHRL hostile work environment claim survives against all defendants.  By necessity, conduct that meets the standard for a hostile work environment under Title VII and the NYSHRL must meet the standard for a hostile work environment under the NYCHRL.  *Id.* And an employer is liable for the conduct of a non-supervisory employee under the NYCHRL if "another employee or agent who exercised managerial or supervisory responsibility" knew of the "discriminatory conduct, and acquiesced in such conduct or

---

[10] Sebastiani also pleads claims for gender discrimination and sexual harassment under the NYCHRL.  *See* Compl. ¶¶ 133-59.  But "[t]he NYCHRL does not have separate standards for discrimination, harassment and hostile work environment claims; rather, there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender."  *Mayorga v. Greenberg*, No. 22-CV-387, 2023 WL 6307994, at *9 (E.D.N.Y. Sept. 28, 2023) (collecting cases).  Accordingly, whether Sebastiani's claim is stated as a hostile work environment, gender discrimination, or sexual harassment claim, it survives.

failed to take immediate and appropriate corrective action."
N.Y.C. Admin. Code § 8-107(13)(b)(2).  There is a genuine
dispute of fact regarding whether Dym, a supervisor, knew of
Lee's conduct, failed to act, and — in so doing — acquiesced in
that conduct.  Finally, "[t]he same standards of analysis used
to evaluate aiding and abetting claims under the NYSHRL apply to
such claims under the NYCHRL," *Feingold v. New York*, 366 F.3d
138, 158 (2d Cir. 2004), meaning Sebastiani's NYCHRL hostile
work environment claim may proceed against the individual
defendants.  *See* Section III.B.2, above.

   *Retaliation.*  "[T]o prevail on a retaliation claim
under the NYCHRL, the plaintiff must show that she took an
action opposing her employer's discrimination, and that, as a
result, the employer engaged in conduct that was reasonably
likely to deter a person from engaging in such action."
*Mihalik*, 715 F.3d at 112.  Under the NYCHRL's broader standard,
the retaliation "need not result in a materially adverse change
in the terms and conditions of employment" so long as it is
sufficiently deterrent.  *Golston-Green v. City of New York*, 184
A.D.3d 24, 38 (2d Dep't 2020) (quoting N.Y. Admin. Code § 8-
107(7)).  But even assuming, without deciding, that the
hospital's investigation into Sebastiani was a sufficiently
deterrent action, he "still must adduce admissible evidence that
retaliation was at least a partial motivating factor."

*Forrester v. Corizon Health, Inc.*, 752 F. App'x 64, 66 (2d Cir. 2018).  And he has failed to do so.

"[T]emporal proximity alone is not enough to demonstrate retaliation under the NYCHRL," *id.*, and that is all Sebastiani relies on here.[11]  After all, he does not contest that (at least ostensibly) the hospital investigated him and ultimately took him off duty for renting his hospital-owned apartment on Airbnb, Pl.'s 56.1 ¶¶ 125, 133, nor does he contest that he resigned shortly before a meeting to discuss allegations that he had performed unauthorized surgeries at the dental clinic.  *Id.* ¶¶ 144, 153.  The closest he comes to presenting evidence that the hospital's actions were pretextual is by citing his own testimony that other residents subleased their apartments.  *See id.* ¶¶ 39, 40.  But that was merely what Lee told him, Sebastiani Dep. 802:18-25, ECF No. 177-5, and he neither states the basis for her alleged knowledge on this point nor adduces any specific evidence that the hospital condoned this practice or turned a blind eye when other residents did it.

Accordingly, Sebastiani has presented "no direct evidence of a connection between the adverse employment

_____

[11] Sebastiani does assert that "after [his] last complaint to Dym, Dym threatened Sebastiani, saying that if Sebastiani interfered with his program Dym would destroy his career."  Pl.'s Br. in Opp. to Summ. J. 22–23.  But he cites absolutely no evidence to support this contention, so the Court cannot credit it.  *See DiStiso v. Cook*, 691 F.3d 226 (2d Cir. 2012) ("A court reviewing a motion for summary judgment . . . cannot credit a plaintiff's merely speculative or conclusory assertions.").

action . . . and the protected activity. . . . Indeed, [he] testified that [Dym] didn't care about his complaints." *Nelson v. Argyropoulous*, No. 18-CV-11413, 2021 WL 4352313, at *3–4 (S.D.N.Y. Sep. 24, 2021). And when he reported Lee's behavior to human resources, they had her removed from her position at the hospital. Pl.'s 56.1 ¶ 137. That the hospital learned of the Airbnb rental and began investigating Sebastiani around the same time, Pl.'s 56.1 ¶¶ 94-96, is not enough for his retaliation claim to survive summary judgment. *Forrester*, 752 F. App'x at 66.

## D.  Conversion Claim

"[W]hen a counseled party moves for summary judgment, a partial response by the non-movant arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims." *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016). Here, because Sebastiani does not address the hospital's arguments for dismissing his conversion claim, *see generally* Opp'n Br., we deem it abandoned.

## IV.  Conclusion

For the foregoing reasons, defendants' motions for summary judgment (ECF Nos. 174, 177) are granted in part and denied in part. Sebastiani's hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL may proceed, except

that he may not pursue his Title VII claim against the

individual defendants.  The motions are otherwise granted.


SO ORDERED.




    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:    March 25, 2026
          Brooklyn, New York